UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO: 25-CR-00133-RDM |
| v. : | |
| : | Judge Moss |
| TIMOTHY BROCKERMAN, : | |
| : | |
| Defendant. : | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO THE COURT'S INQUIRY REGARDING RECENT SENTENCING DATA**

Defendant Timothy Brockerman, through counsel, respectfully submits this Reply to the Government's Response to the Court's inquiry regarding recent sentencing data. As previously argued in Mr. Brockerman's Memorandum in Aid of Sentencing and further supported by the new information before the Court, a sentence of **36 months of incarceration, followed by 60 months of supervised release**, represents a just, reasonable, and sufficient resolution of this matter. This sentence constitutes an appropriate downward variance from the advisory Guidelines range, is consistent with the Probation Office's own recommendation for a variance, and aligns with sentencing patterns in comparable cases within this District and nationally.

**I. THE COURT'S SENTENCING COMMISSION INQUIRY REINFORCES THE APPROPRIATENESS OF A SUBSTANTIAL VARIANCE**

The Court's Minute Order (Document 43 Minute Order, dated 02/20/26), conveying the Sentencing Commission's findings on 18 U.S.C. § 2423(b) cases with Mr. Brockerman's Guidelines profile (Final Offense Level 33[1], Criminal History Category I), provides critical context for this Court's sentencing decision. This data demonstrates that substantial downward variances are not only common but also expected in these types of cases.

Nationally, out of 17 similar cases over the last ten fiscal years, sentences ranged broadly from **"nine days time served to 204 months."** More importantly, in six cases where the court varied below the guideline range *not at the request of the government* (a scenario analogous to Mr. Brockerman's request for a greater variance than Probation's recommendation), the average length of imprisonment was 87 months, the median was 109 months, and sentences again ranged from **"time served (of nine days) to 123 months."**

---

[1] *As noted in the government's Response, the government is asking the Court to follow a guideline range of 108 to 135 months, consistent with an offense level of 31. These were the terms of the plea agreement entered into by the Defendant.*

1

Specifically, within the District of Columbia, the Sentencing Commission found four such cases, all of which resulted in sentences *below* the guideline range. In two of these cases, where the court varied downward without government request, sentences of **60 months and 123 months** were imposed.

This data unequivocally refutes any assertion that sentences significantly below the advisory Guidelines range, such as the 36 months requested by Mr. Brockerman, are an "aberration." To the contrary, courts nationally and within this District routinely exercise their individualized sentencing discretion under 18 U.S.C. § 3553(a) to impose sentences well below the Guidelines, demonstrating that the full spectrum of variance, including very low periods of incarceration, is a recognized and utilized practice. The appropriateness of such a variance for Mr. Brockerman is further underscored by the compelling distinctions between his case and those cited by the Government.

## II. DISTINGUISHING MR. BROCKERMAN FROM NATHANIEL SCOTT AND OTHER CASES CITED BY THE GOVERNMENT

The Government, in its Response, attempts to distinguish Mr. Brockerman's case from *United States v. Ravi Singit* (1:15-cr-00159-JDB) and to suggest that cases like *Nathaniel Lamar Nelson Scott* (24-cr-287) and *Rodney Davis* (18-cr-26) are more similar. While acknowledging the seriousness of Mr. Brockerman's conduct, crucial distinctions remain that warrant a sentence at the lower end of the variance spectrum, consistent with our request.

### A. Mr. Brockerman Presents a Significantly Lower Risk of Recidivism than Nathaniel Scott.

The most critical distinction from *Nathaniel Lamar Nelson Scott*, a case where the government sought 120 months and the defendant received 96 months (Government's Response, page 1), lies in the assessed risk of recidivism. As detailed in the Government's Sentencing Memorandum for *Nathaniel Scott* (Document 26, 24-cr-287-DLF, page 6), Mr. Scott was assessed as presenting an **"Above Average risk" of reoffending**, described as "roughly twice the risk of recidivism as the average offender." This assessment was based on an integrated analysis of Static-99R and STABLE-2007 scores, indicating a demonstrably elevated threat to public safety.

In stark contrast, Mr. Timothy Brockerman has been definitively assessed by Dr. Shauna Keller (Exhibit 1) as presenting a **"low-to-moderate" risk for sexual reoffending**, with a predicted 5-year sexual recidivism rate of 11.6% (Static-99R score of 3, STABLE-2007 score of 11). This expert opinion underscores that a significant majority of individuals with Mr. Brockerman's profile do not reoffend. This is not a subtle difference; it is a fundamental distinction directly impacting public safety considerations under 18 U.S.C. § 3553(a)(2)(C). A defendant presenting a "low-to-moderate" risk, as opposed to an "above average risk," inherently warrants a more rehabilitative and less punitive approach to sentencing.

2

**B. The Nature of Mr. Brockerman's Communications and Intent Differs Markedly from Nathaniel Scott's.**

While both cases involve deeply troubling online communications, the explicit and aggressively predatory nature of Mr. Scott's documented intent (as described in the Government's Sentencing Memorandum for *Nathaniel Scott*, pages 2, 4-5) far exceeds that described in Mr. Brockerman's case. Mr. Scott's communications included referring to a six-year-old as the "perfect age," openly fantasizing about "tickling her and gripping her and molesting her," and inquiring about bathing with the child. This detailed, explicit, and aggressive planning demonstrates a heightened level of predatory intent and desensitization.

In Mr. Brockerman's case, while the conduct is serious, it was fundamentally rooted in a problematic fantasy life exacerbated by an aggressive undercover operation (Dr. Keller, Exhibit 1). This distinction is further highlighted by the "GOVERNMENT'S NOTICE OF CORRECTION" regarding the mistaken attribution of a chat about an 11-year-old to Mr. Brockerman. Our argument is not to excuse Mr. Brockerman's actions, but to provide context under § 3553(a)(1). The severity of the expressed intent, when viewed through the lens of Dr. Keller's evaluation of Mr. Brockerman's trauma and fantasy life, is less indicative of the active, predatory grooming seen in cases like *Scott*.

**C. Mr. Brockerman Possesses Unique Mitigating Factors that Warrant a Greater Variance.**

Unlike Mr. Scott, whose background details provided in his government sentencing memo (page 5) are less extensive than Mr. Brockerman's, Mr. Brockerman presents a unique constellation of mitigating factors that militate in favor of a sentence at the lower end of the variance range:

1. **Absence of an Actual Child Victim:** As previously emphasized, Mr. Brockerman's offense involved a **fictitious minor** as part of an undercover operation. There was no real child placed in actual harm's way, a critical distinction for the calculus of the offense's seriousness and public protection under § 3553(a).

2. **Extensive Trauma History:** Dr. Keller's evaluation (Exhibit 1) meticulously details Mr. Brockerman's severe childhood trauma, including physical and sexual abuse and emotional neglect. These experiences are directly linked to his psychosexual functioning and emotional dysregulation, providing crucial context for his conduct. Such a profound trauma history warrants significant mitigating weight.

3. **Robust, Credible Support System:** Mr. Brockerman benefits from the extraordinary and unwavering support of his friend and caregiver, Shane Marc Bennett (Exhibit 2). Mr. Bennett, a highly credible individual with a distinguished career in federal intelligence, has committed to providing Mr. Brockerman with a stable home,

resources for continued counseling, and support for reintegration upon release. This level of credible, long-term support is a powerful protective factor.

4. **Genuine Remorse and Offer to Cooperate:** Mr. Brockerman has expressed profound remorse and taken full responsibility. Furthermore, he proactively **offered to cooperate with law enforcement** in efforts to identify and stop online predators. While this offer was ultimately not utilized by the government, it speaks volumes about his sincere desire to atone for his actions and contribute positively. This is a powerful indicator of rehabilitation, mirroring arguments successfully made in cases like *Ravi Singit* (reference to argument in initial filing, Section V.A.2.e).

### III. THE BROADER LANDSCAPE OF VARIANCES SUPPORTS MR. BROCKERMAN'S REQUEST

The Government's Response also identifies other cases, including *Rodney Davis* (18-cr-26) sentenced to 108 months, and *Jan Astaphan* (21-cr-194) sentenced to 123 months. Even these cases, which the government deems "most similar," reflect sentences substantially below their Guideline ranges (e.g., Davis's 108 months from a 108-135 month range). This reinforces that variances are customary.

Beyond these, as argued in our original memorandum using the *Singit* defense memo (Exhibit 8 of initial filing) as a guide, numerous other cases in this District and elsewhere involving similar offenses have resulted in significantly lower periods of incarceration. These include:

- *United States v. Marc Singleton*, 14-cr-206 (D.D.C.): **1 year and 1 day** imprisonment.
- *United States v. Michael Gutierrez*, 14-cr-194 (D.D.C.): **33 months** imprisonment.
- *United States v. George Kahl*, 13-cr-99 (D.D.C.): **40 months** imprisonment.
- *United States v. Robert Welch*, 11-cr-153 (D.D.C.): **27 months** imprisonment.
- *United States v. Copeland*, 11-cr-92 (D.D.C.): **24 months** imprisonment.

This broad array of comparable federal sentences, some involving more egregious conduct or additional charges, further illustrates that a 36-month period of incarceration for Mr. Brockerman, especially given his low risk of recidivism, profound trauma history, and exceptional support system, is well within the recognized range of appropriate variances. It demonstrates that courts routinely find compelling mitigating factors to warrant sentences substantially below advisory Guidelines ranges, often at the lower end of the sentencing spectrum.

## IV. CONCLUSION

For the foregoing reasons, a sentence of 36 months of incarceration, followed by 60 months of supervised release, constitutes a just, reasonable, and sufficient sentence for Mr. Timothy Brockerman. This sentence fully accounts for the seriousness of his offense, Mr. Brockerman's acceptance of responsibility, his profound remorse, his unique history of trauma, his low-to-moderate risk of recidivism, the absence of an actual child victim, and the compelling evidence of his treatability and post-release support. It avoids unwarranted disparities, consistent with federal sentencing in comparable cases like *Singit* and the broader range of variances demonstrated by the Sentencing Commission data. Most importantly, it most effectively serves the goals of sentencing by prioritizing individualized treatment and supervision, thereby protecting the public in the long term.

Mr. Brockerman respectfully requests that this Honorable Court grant the requested downward variance and impose a sentence consistent with these arguments.

Respectfully submitted,

  */s/Chris Mutimer/s/*
Christopher Mutimer
D.C. Bar No. 1011284
Counsel for the Defendant
1100 H Street, NW Unit 1010
Washington, D.C. 20005
(202) 670-2390
cjm@monumentlegal.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court, and provided to all parties of record via CM/ECF this 27th day of February, 2026

*/s/Christopher J. Mutimer/s/*
Christopher Mutimer

# EXHIBIT LIST

## (Exhibits included in Defense Sentencing Memorandum)

1. Dr. Shauna Keller Psychosexual Evaluation, dated 01/16/2026

2. Character Letter from Shane Marc Bennett, dated 12/26/2025

3. "Criminal Deterrence and Sentence Severity: An Analysis of Recent Research" by A. von Hirsch et al. (1999)

4. "The Second Look Movement: An Assessment of the Nation's Sentence Review Laws" by Sara Cohbra and Becky Feldman (August 27, 2025)

5. "Sex Offenders and Sex Crime Recidivism: Investigating the Role of Sentence Length and Time Served" by Kristen Budd and Scott A. Desmond (2014)

6. Sentencing Recommendation for Timothy Brockerman from Probation Office

7. Charging Complaint, *United States v. Ravi Singit*, Criminal No. 1:15-cr-00159-JDB (D.D.C.)

8. Docket, *United States v. Ravi Singit*, Criminal No. 1:15-cr-00159-JDB (D.D.C.)